IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JHEN SCUTELLA, | ) | |
| --- | --- | --- |
| Plaintiff | ) | C.A. No. 11-198 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge Cohill |
| CITY OF ERIE BUREAU OF POLICE, et al., | ) | Magistrate Judge Baxter |
| | ) | |
| Defendants. | ) | |

# REPORT AND RECOMMENDATION

## I.  RECOMMENDATION

It is respectfully recommended that Defendants' motion for summary judgment [ECF No. 73] be granted in part and denied in part.

## II.  REPORT

### A.  Relevant Procedural History

On September 9, 2011, Plaintiff Jhen Scutella instituted this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, against Defendants City of Erie Bureau of Police ("Erie Police"), and Erie Police officers Matthew Eicher ("Eicher"), Michael Brown ("Brown"), and James Cousins, II ("Cousins"). Plaintiff subsequently filed an amended complaint against the same Defendants on March 8, 2012 [ECF No. 22].

In his amended complaint, Plaintiff alleged federal claims of "excessive force in violation of fourth amendment and eighth amendment, malicious prosecution, conspiracy pursuant to 42 U.S.C. [sic], deprivation of due process rights and finally refusal and failure of medical attention while incarcerated at the Erie police station." (ECF No. 22, Amended Complaint, at p. 2). In addition, Plaintiff alleged pendent state law claims of assault, battery, intentional infliction of emotional distress, and conspiracy. (Id.). As relief for his claims, Plaintiff sought monetary damages and injunctive relief in the form of "restraining orders from these officers from any

property I own and me." (Id.).

On March 19, 2012, Defendants filed a motion to dismiss amended complaint [ECF No. 23]. On April 20, 2012, this Court issued a Report and Recommendation recommending that Defendants' motion be granted as to Plaintiff's malicious prosecution, due process, and Eighth Amendment excessive use of force claims, but denied as to all other claims [ECF No. 30]. This Report and Recommendation was adopted, with modifications, by Memorandum Order of District Judge Maurice B. Cohill [ECF No. 32], who granted Defendants' motion as to Plaintiff's malicious prosecution claim, and his excessive use of force claim to the extent it is premised on the Eighth and Fourteenth Amendments; however, Judge Cohill allowed the excessive use of force claim to proceed under the Fourth Amendment. Judge Cohill also granted Defendants' motion as to Plaintiff's municipal liability claim against the Erie Police, without prejudice to his right to file a second amended complaint to allege further allegations in support of such claim. The remainder of Defendants' motion to dismiss was denied, such that the following claims were allowed to proceed: (1) a Fourth Amendment excessive use of force claim; (2) a conspiracy claim; (3) an inadequate medical care claim under the Fourteenth Amendment Due Process Clause; (4) pendent state law claims of assault, battery, intentional infliction of emotional distress, and conspiracy; and (5) a municipal liability claim against Erie Police to the extent the same is supported by additional allegations in a second amended complaint.

In accordance with Judge Cohill's Order, Plaintiff filed a second amended complaint on or about June 14, 2012 [ECF No. 35], setting forth each of the foregoing claims, while adding additional allegations in support of his municipal liability claim. In addition, Plaintiff added three new Defendants, who have been identified as Erie Police officers Jerry Stevens ("Stevens"), William Goozdich ("Goozdich"), and Sgt. Noble ("Noble"). Defendants filed an answer to the second amended complaint on June 21, 2012 [ECF No. 36], and the parties have since completed discovery.

On December 30, 2013, Defendants filed a motion for summary judgment, arguing that

Plaintiff is unable to demonstrate that he was deprived of any of his constitutional rights and that Defendants are entitled to qualified immunity [ECF No. 73]. Plaintiff has since filed a response to Defendants' motion [ECF No. 77], to which Defendants have filed a reply brief [ECF No. 78]. This matter is now ripe for consideration.

### B. Relevant Factual History[1]

At approximately 2:30 a.m. on August 25, 2011, Defendant Eicher observed Plaintiff driving through a red light at the intersection of Elm Street and East 26th Street in the City of Erie (ECF No. 76, Defendants' Statement of Material Facts, at ¶ 3). Defendant Eicher followed Plaintiff's vehicle, which Plaintiff continued to drive at a high rate of speed through several intersections, while failing to stop at three stop signs (Id. at ¶ 4). Plaintiff eventually stopped his vehicle in the 700 block of East 24th Street and exited the vehicle (Id. at ¶ 6). Defendant Eicher told Plaintiff to get back in the vehicle, but Plaintiff ignored him and, instead, stood outside the vehicle and spoke to his passenger through the driver's side window (Id. at ¶ 7). Defendant Eicher then told Plaintiff he was under arrest; however, Plaintiff refused to place his hands behind his back and a struggle ensued, with both men eventually dropping to the ground (Id. at ¶¶ 9-10). When Plaintiff continued to resist Defendant Eicher's efforts to handcuff him, Eicher called for assistance and Defendants Stevens and Goozdich arrived at the scene and helped to remove Plaintiff's hands from under his body so they could be placed in handcuffs (Id. at ¶¶ 9-11). Defendant Cousins then arrived at the scene and, after assessing the situation, deployed his Taser, administering a single five-second discharge to Plaintiff (Id. at ¶ 12).

Plaintiff was transported by Defendant Cousins to the Erie police station, where he was booked and placed in a cell to await arraignment (Id. at ¶ 14). While Plaintiff was at the police

---

[1] The factual history set forth herein is gleaned from Defendants' Statement of Material Facts [ECF No. 76], to the extent they are fully supported by the record.

station, Defendant Brown read him his rights concerning chemical testing, because Plaintiff was visibly intoxicated, but Plaintiff became belligerent and refused to sign the testing form (Id. at ¶ 15). Defendant Noble was in charge of the police station on the night of Plaintiff's arrest and declares that Plaintiff did not request medical treatment, nor did he complain of any injuries (Id. at ¶ 16).

The criminal complaint against Plaintiff charged him with driving under the influence, going through three stop signs, going through a red light, careless driving, speeding, fleeing and eluding, resisting arrest, aggravated assault, disorderly conduct, and public drunkenness (Id. at ¶ 17). The charges were bound over to court at the conclusion of a preliminary hearing held before Magisterial District Judge LeFaiver (Id. at ¶ 18).

On March 6, 2012, Plaintiff, with his legal counsel, appeared before Judge Connelly of the Erie County Court of Common Pleas and entered voluntary pleas of guilty to all charges, except for aggravated assault and fleeing or attempting to elude an officer (Id. at ¶ 19). Plaintiff did not file a motion to withdraw his guilty pleas, nor did he file a direct appeal from his conviction and sentence. He did subsequently file a petition under the Pennsylvania Post Conviction Relief Act ("PCRA"), raising ineffective assistance of counsel, but the petition was denied on October 15, 2013 (Id. at ¶ 21).

### C. Standards of Review

#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own

pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh

the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

"Where the party opposing a motion for summary judgment bears the ultimate burden of proof, the moving party may discharge its initial burden of showing that there is no genuine issue of material fact 'by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" Player v. Motiva Enterprises, LLC, 240 Fed.Appx 513, 522 n4 (3d Cir. 2007) quoting UPMC Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). If the moving party has satisfied its initial burden, the nonmoving party must, in their opposition to the motion, identify evidence of record that creates a genuine issue of material fact. Childers v. Joseph, 842 F.2d 689, 694-95 (3d Cir. 1988).

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail,

it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### D. Discussion
#### 1. Municipal Liability Claim Against Erie Police

This Court previously recommended that Plaintiff's municipal liability claim against Defendant Erie Police be dismissed because Plaintiff failed to allege the existence of a policy or custom that allegedly resulted in a constitutional violation. (See, ECF No. 30, Report and Recommendation, at pp. 6-7, citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978)). In addition, the Court noted that a policy, custom or practice cannot arise from one incident, i.e., the alleged excessive use of force by the individual Defendants. See, e.g., Turner v. City of Philadelphia, 22 F.Supp.2d 434, 437 (E.D.Pa. 1998), quoting Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) ("Absent unusual circumstances, 'proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'").

Although District Judge Cohill agreed with this Court's recommendation to dismiss

Plaintiff's municipal liability claim, as stated in his first amended complaint, he did so without prejudice to Plaintiff's right to file a second amended complaint containing additional allegations to support his municipal liability claim. (ECF No. 32, Memorandum Order, at p. 3). Plaintiff has since done so. Defendants now argue that Plaintiff's additional allegations in support of his municipal liability claim, as stated in his second amended complaint, remain insufficient as a matter of law. The Court agrees.

Plaintiff has simply stated in conclusory fashion that the Erie Police "should be held liable because they had a policy or custom of assaults by their employees against its citizens and for failing to train or monitor or supervise them." (ECF No. 35, Second Amended Complaint, at ¶ 18). Plaintiff alleges further that the Erie Police "are aware of numerous recent publicized reports of assaults against other citizens for excessive force and this is their policy to not correct it." (Id.). Such vague and conclusory statements fail as a matter of law to establish the existence of a policy or custom upon which a claim of municipal liability may be based. Defendant Erie Police should be granted summary judgment on such claim.

### 2. Fourth Amendment Excessive Use of Force Claim
#### a. Heck v. Humphrey

As in their prior motion to dismiss, Defendants again argue that Plaintiff's claim of excessive use of force is barred by the Supreme Court's holding in Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that, in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated

is not cognizable under § 1983." 512 U.S. at 487 (emphasis in the original).

As noted in this Court's previous Report and Recommendation, the same is not true of Plaintiff's excessive use of force claim, as successful prosecution of such claim would not render Plaintiff's pending conviction or sentence invalid. In particular, the Third Circuit Court has held that a conviction for resisting arrest does not necessarily preclude an arrestee from recovering damages on a § 1983 claim of excessive use of force against the police officers who arrested him. Garrison v. Porch, 376 Fed.Appx. 274, 277-78 (3d Cir. 2010), citing Nelson v. Jashurek, 109 F.3d 142, 145-46 (3d Cir. 1997) (holding that *Heck v Humphrey* does not bar an excessive force claim where the plaintiff was convicted of resisting arrest). In doing so, the Third Circuit held that "a reasonable juror, considering the totality of the circumstances, could find that the arrestee resisted arrest, but was still subjected to an unreasonably excessive level of force by the police officer in response." Nelson, 109 F.3d at 146.

Nonetheless, Defendants attempt to couch the holding of Nelson in such a way as to preclude Plaintiff from questioning the degree of force used during his arrest; however, a plain reading of Nelson renders Defendants' efforts futile. Moreover, Defendants' characterization of Plaintiff's excessive use of force claim as arising "out of his contention that he was unlawfully or unfairly arrested and prosecuted" and, thus, precluded by Heck, is off base, as Plaintiff's second amended complaint does not contain any allegations of false arrest or prosecution. In short, Defendants' renewed attempt to invoke the bar of Heck to preclude Plaintiff's excessive use of force claim is meritless and must be denied as a basis for granting them summary judgment on such claim.

### b. Qualified Immunity

As an alternative basis for obtaining summary judgment on Plaintiff's excessive use of force claim, Defendants claim that they are entitled to qualified immunity. In particular, Defendants focus on Defendant Cousins's use of a Taser on Plaintiff, claiming that, at the time,

"there was no Third Circuit or Supreme Court precedent dealing with the issue of what level of force use of a Taser constitutes" and, thus, "it would not have been clear to Officer Cousins that his actions constituted excessive force or that he violated the Fourth Amendment by using a Taser under this factual scenario." (ECF No. 74, Defendants' Brief, at pp. 12-13).

Initially, the Court notes that Plaintiff's excessive force claim is not restricted to Defendant Cousins' use of a Taser, but also encompasses Defendant Eicher's conduct, particularly his use of a submission hold that Plaintiff claims was choking him, as well as Plaintiff's allegations that Defendants Stevens, Goozdich, and Cousins "punched and elbowed and kicked" him while he was handcuffed on the ground. (ECF No. 35, Second Amended Complaint, at ¶¶ 8-10). As to these claims, Defendants have not raised any basis upon which summary judgment should be granted in their favor, aside from the Heck argument discussed above. That having been said, the Court will now address Defendants' qualified immunity argument as it applies to Defendant Cousins Taser use.

The doctrine of qualified immunity insulates government officials from liability for damages[2] insofar as their conduct does not violate clearly established rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, "qualified immunity shields government officials from suit even if their actions were unconstitutional as long as those officials' actions 'did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Burns v. Pennsylvania Department of Corrections, 642 F.3d 163, 176 (3d Cir. 2011) quoting Harlow, 457 U.S. at 818. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their

---

[2] The defense of qualified immunity only applies to monetary damages and not to requests for injunctive relief. Burns, 2011 WL 1486075, at *12 ("Although qualified immunity bars Burns from seeking monetary compensation, he may still be entitled to injunctive relief. See Harris v. Pernsely, 755 F.2d 338, 343 (3d Cir. 1985)."). In this case, however, the only relief requested by Plaintiff is monetary damages.

duties reasonably." Burns, at 176 quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009).

The analytical framework that district courts have traditionally employed in determining whether the defense of qualified immunity applied was set forth by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001). The Third Circuit summarized that framework as follows:

> The [Supreme] Court explained that a qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? Saucier, 121 S.Ct at 2156. If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established. See id. In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id.

Curley v. Klem, 278 F.3d 271, 277 (3d Cir. 2002). See also Doe v. Delie, 257, F.3d 309 (3d Cir. 2001).[3] This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.

"Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 530 U.S. 730, 739 (2002). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. In order for an official "to have 'fair warning' [...] that his or her actions violate a person's rights, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Burns, at 176, quoting United States v. Lanier, 520 U.S. 259, 270 (1997) and Anderson v. Creighton, 483 U.S.

---

[3] The rigid two-step inquiry set forth in Saucier was relaxed by the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808 (2009). See also Bumgarner v. Hart, 2009 WL 567227 (3d Cir. 2009). As the Supreme Court explained: "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case." Pearson, 555 U.S. at 240.

635, 640 (1987). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Groh v. Ramirez, 540 U.S. 551, 56 (2004). The party asserting the defense of qualified immunity bears the burden of establishing it. See Harlow, 457 U.S. at 819.

Here, Defendants argue that the attendant uncertainty in the law regarding the Taser's level of force absolves Defendant Cousins of liability under the doctrine of qualified immunity. However, the question of whether the Taser's level of force was excessive is, at best, a secondary issue here; the larger issue is whether Defendant Cousins's use of a Taser on Plaintiff was actually necessary under the circumstances existing at the time. On this issue, the facts are far from clear. While Defendant Cousins declares that his use of the Taser was necessary to subdue Plaintiff so that his hands could be placed in handcuffs (ECF Nos. 73-13, 73-14, Affidavit of Defendant Cousins and supporting memorandum), both Defendants Goozdich and Stevens declare that they were able to remove Plaintiff's hands from beneath his body so that they could be placed in handcuffs, without mentioning any need for, or intervening use of, a Taser (ECF Nos. 73-10 and 73-12, Affidavits of Defendants Goozdich and Stevens, respectively). Thus, the necessity and/or reasonableness of Defendant Cousins' use of the Taser remains at issue, such that summary judgment is precluded even before reaching the issue on which Defendants' qualified immunity argument is based.

### 3. Remaining Claims

Aside from the foregoing, Defendants have failed to move for summary judgment with regard to Plaintiff's conspiracy, Fourteenth Amendment inadequate medical care, and pendent state law claims, on a particular basis. Instead, Defendants cite Plaintiff's misconduct throughout the proceedings in this case as a general basis for granting summary judgment in their favor on all claims. According to Defendants, such misconduct largely consists of offering deposition testimony and filing pleadings that contradict his guilty pleas and conviction. Although the Court

finds such alleged dishonesty reprehensible and does not, in any way, condone such behavior, it is not willing to dismiss all claims as a consequence, especially in light of the seriousness of the claims raised in the case. Defendants' objections are more suitable for pretrial motions, such as motions in limine, rather than as a basis for bad faith dismissal.

### III.     CONCLUSION

For the foregoing reasons, it is respectfully requested that Defendants' motion for summary judgment [ECF No. 73] be granted in part and denied in part, as follows:

1. Defendants' motion should be granted as to Plaintiff's municipal liability claim against Defendant Erie Police and said Defendant should be terminated from this case; and

2. Defendant's motion should be denied in all other respects.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file objections will waive the right to appeal. Brightwell v. Lehman, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  August 29, 2014

cc:   The Honorable Maurice B. Cohill
      United States District Judge